**BEFORE THE UNITED STATES JUDICIAL PANEL
ON MULTIDISTRICT LITIGATION**

| | |
|---|---|
| IN RE: FedEx Corp. Tariffs and Related Fees Litigation | MDL No. 3184 |

**INTERESTED PARTY RESPONSE IN OPPOSITION TO
CENTRALIZATION UNDER 28 U.S.C. § 1407.**

COMES NOW, Interested Party Plaintiff Hali Anastapoulo, Plaintiff in the cases styled *Anastopoulo v. FedEx Corp.*, Western District of Tennessee, Case No. 2:26-cv-02181; *Anastopoulo v. FedEx Corp.,* District of South Carolina, Case No. 2:26-cv-00753-BHH; and *Anastopoulo v. FedEx Corp., District of Delaware, Case No. 1:26-cv-00236-UNA,* by and through undersigned counsel, respectfully submit this response in opposition to Plaintiff Matthew Reiser's Motion for Transfer and Consolidation pursuant to 28 U.S.C. § 1407.

While Plaintiff agrees that these actions involve common questions of fact, centralization via the creation of a multidistrict litigation (MDL) is not necessary at this time and will not advance the efficient conduct of this litigation.

## I.    INTRODUCTION

This litigation arises from FedEx's collection of (a) import duties and/or (b) ancillary brokerage and clearance fees that FedEx collected from Plaintiff and the proposed Classes on imported goods as triggered by the International Emergency Economic Powers Act ("IEEPA"), which the United States Supreme Court declared unlawful in *Learning Resources, Inc. v. Trump*, 146 S. Ct. 628, Nos. 24 1287 & 25-250 (U.S. Feb. 20, 2026). In their determination, the Supreme

Court established that IEEPA does not authorize the imposition of tariffs. The cases that are pending through multiple districts seek recovery of those unlawfully collected amounts.

However, unlike many MDL candidates, the parties here are taking meaningful steps to coordinate proceedings without the need for centralization pursuant 28 U.S.C. § 1407.

## II.    ALTOUGH COMMON QUESTIONS EXIST, MDL CENTRALIZATION IS NOT NECESSARY

Plaintiffs of these parallel actions claim that FedEx collected tariffs and related fees, from Plaintiffs and the proposed Class Members, which have been held unlawful. These actions arise from the same operative facts, including a) if Defendants imposed tariff – related charges under IEEPA; b) if those tariffs were unlawful following the Supreme Court's decision; c) if Defendants improperly retained tariff payments and related fees; and d) if class members are entitled to restitution, damages, or equitable relief.

Here, Plaintiff does not dispute that these actions have overlapping factual and legal issues. However, the fact that common questions exist does not mandate, by itself, centralization under 28 U.S.C. § 1407. (See, *In re Coll. Athlete Comp. Antitrust Litig.,* 730 F. Supp. 3d 1378 (N.D. Cal. 2024) were the Court determined that centralization under 28 U.S.C. § 1407 was not necessary because, despite the common questions of fact regarding alleged violations of the Sherman Act, centralization was not seen as essential for the convenience of the parties and witnesses or for the efficient conduct of the litigation).

The question here is whether MDL is necessary to promote efficiency. We believe that here, it is not necessary. It is known that Courts and the Panel routinely have declined centralization when parties are capable of coordinating proceedings through less formal means. (See, *In re Giant Eagle, Inc.*, 330 F. Supp. 3d 1376 (W.D. Pa. 2018) were the JPML denied centralization under 28 U.S.C. § 1407 and noted that since plaintiff's counsel was willing to informally coordinate any

2

overlapping discovery and pretrial proceedings, informal coordination is a practicable alternative to centralization). That is the situation here.

### III.    PARTIES ARE PURSUING COORDINATION WITHOUT MDL

In accordance with the Panel's directive, Plaintiff as an Interested Party respectfully states that the parties have discussed alternatives to formal centralization pursuant to 28 U.S.C. § 1404.

Specifically, on March 6, 2026, Interested Party met and conferred with opposing counsel to discuss coordination of these related actions. During the meeting, the parties discussed informal coordination of scheduling and the potential for voluntary transfer and consolidation in a single district. During the meet and confer, Plaintiff's counsel acknowledged that the cases may ultimately be consolidated in the Western District of Tennessee and further indicated that they would agree to transfer and consolidate the action in that district if the parties agreed that it was the most appropriate venue.

These efforts demonstrate that the parties are taking steps toward coordination, demonstrating that the parties are capable of and are engaged in coordinating this litigation efficiently without invoking 28 U.S.C.§1407.

### IV.    INFORMAL COORDINATION AND 28 U.S.C. § 1404 TRANSFER ARE APPROPIATE HERE

The availability of voluntary coordination and transfer weighs heavily against centralization. Unlike other MDL proceedings that involve dozens of actions across the country that do not have a clear focal point, parties agree that all cases should be under a single forum: the Western District of Tennessee.

The Western District of Tennessee is the optimal forum for several reasons. First, Defendants maintain their principal place of business in Memphis, Tennessee, within the Western District.  As a result, key witnesses, documents, and corporate decision making are centered in this

district. Second, at least two of the actions, are already pending in the Western District Tennessee, promoting judicial efficiency and minimizing disruption. Third, due to Defendant's presence in Memphis, this district provides a convenient forum for the Corporate Witnesses, documentary evidence and coordinated evidence. Finally, the tariff collection policies and practices at issue were developed, implemented and administered, at least in part, from FedEx's headquarters in Tennessee.

By proceeding to voluntarily transfer cases to the Western District of Tennessee under 28 U.S.C.§1404 and continue coordination among counsel, the parties will achieve the same efficiencies as an MDL, without the added complexity and administrative burden of multidistrict proceedings.

Creating an MDL at this stage would risk a delay in proceedings that are already moving towards consolidation of cases, introducing additional procedures and disrupting the parties' ongoing coordination efforts. Here, the parties are already aligned toward the transfer of all cases under a single forum, the Western District of Tennessee.

## V.    CONCLUSION

For the foregoing reasons, Plaintiff Anastopoulo requests that the Judicial Panel:

1. Deny the Motion for Transfer and Consolidation pursuant to 28 U.S.C. § 1407; and

2. Allow the parties to continue coordination efforts for these actions through voluntary transfer and consolidation in the Western District of Tennessee.

Dated: April 1, 2026.                    Respectfully Submitted,

                    */s/ Paul J. Doolittle*
                    Paul J. Doolittle
                    **POULIN | WILLEY | ANASTOPOULO LLC**
                    32 Ann Street Charleston, SC 29403
                    Telephone: (803) 222-2222
                    Fax: (843) 494-5536
                    Email:  paul.doolittle@poulinwilley.com
                            cmad@poulinwilley.com

                    *Attorney for Plaintiff Hali Anastopoulo*